Per Curiam.

In December, 1943, defendant Arthur Weather-wax bought from the plaintiffs a farm, stock and equipment for $7,500. The sum of $500 was paid in cash, and a chattel mortgage of $3,000 and a real property mortgage of $4,000 were given for the rest. Amortization of the chattel mortgage was to be at the rate of $50 a month, but principal payments on the real property mortgage did not begin until October, 1948, when it was contemplated the chattel mortgage would' be paid. Interest at 4% was payable on both obligations in October of each year.
On May 1, 1948, Weatherwax left the farm, his wife and his children. Plaintiffs shortly after repossessed and sold the chattels and instituted this action to foreclose the real property mortgage, the complaint alleging, among other things, the complete default of Weatherwax in the payment of any interest since the inception of the debt.
The summons was served by publication. Having failed in his attack upon the sufficiency of the order directing service (Carpenter v. Weatherwax, 275 App. Div. 980), Weatherwax promptly moved the Special Term for an order opening his default in pursuance of section 217 of the Civil Practice Act, and the motion having been denied, he again appeals here.
This section, in terms, imposes a mandatory duty on the court to open the default of a party served only constructively where there is “ good cause shown ”. He “ must ” be allowed to defend after judgment if he applies within the time limits set up by the section. While the language is mandatory, its application rests on a case where “ good cause ” exists. Language like this, which provides no precise standard of its *266 own, implies a rather broad discretion in passing upon the motion.
It differs from a motion to open a default after actual service in one important respect, that in the case of personal service a reason for default is required to be shown, but unless a party served constructively is shown to have actual knowledge of the institution of the action, or from the apparent existence or maturity of claims reasonably to be anticipated in his absence, he would expect to be sued, a good cause for default will usually be deemed to exist. Constructive service is often no service at all and the mechanism is the fictional product of the necessity that sometimes adjudications be made even though a party can not be found and though he may in fact have no notice or knowledge of the process directed against him.
In another and important respect, however, the procedure for opening a default judgment taken after constructive service is identical with that applicable to defaults after actual service. The party seeking to open the default must in either case show a defense to the action on the merits. In considering the code predecessor to section 217 of the Civil Practice Act, the General Term in Marvin v. Brandy (56 Hun 242) allowed a default to be opened where it was found the moving party did not know of the issuance of constructive process against her and showed, in addition, a defense on the merits. This was in 1890, shortly after the enactment of substantially the present language in section 445 of the Code of Civil Procedure. The default was not excused in Fitzgerald Mfg. Co. v. Alexander (200 App. Div. 164) where the moving party on one hand had knowledge of the pendency of the action and on the other showed a defense which the court regarded as frivolous.
There is no proof in the record that the moving defendant had any knowledge of the pendency of this action to foreclose the real property mortgage from the time he left home on May 1, 1948, until he returned on December 6th of the same year. His wife swears she had no communication from him during all this time. If his affidavit, which is very general in terms, be accepted as indicating his beliefs and opinion, he did not believe himself in default in interest on this mortgage and hence would not expect a foreclosure action at the time the action was commenced in May of 1948. But, not having shown that he ever paid any taxes and making no showing of payment on the interest due in October, 1948, he could scarcely feel himself entirely safe from foreclosure during all of the period in which he was away.
*267 We are of opinion, whatever may be said in excuse of the default, that the moving party shows no defense of substance to the cause of action asserted by plaintiffs. The proposed answer consists of a denial of the allegations of default on the mortgage alleged in the complaint; an affirmative defense based on payment ‘ ‘ in full ” of “ all sums of money ’ ’ due under the mortgage; an affirmative defense that notice as required by the mortgage was not given to the moving party that he had not paid taxes; and an omnibus defense that he had complied with his part of the contract.
Except for the payment of interest due October 1, 1947, interest payments are dealt with by the moving party merely in gross generalities. He says that he “ had not defaulted ” in any of the terms of the mortgage; that plaintiff Carpenter each year had retained from milk checks which came to him “ the amount of interest which then became due and payable ” and that the interest “ was fully paid in each year as the same became due and payable ”.
No amounts are shown, and no records or memoranda kept by the moving party of such payments are indicated. Plaintiff Carpenter shows a detailed record of transactions of principal and interest on the chattel mortgage which, as it has been seen, was to be liquidated first. Carpenter contends this record shows all the payments made of any kind. The accuracy of this statement is not specifically disputed by Weatherwax except for the allocation of a payment made on October 1, 1947. The character of this payment assumes a position of crucial importance in the contentions of the parties.
Carpenter’s record of account shows that $200 was paid by Weatherwax on October 1,1947. Of this sum, the account shows that $150 was credited to principal payments on the chattel mortgage which it is not disputed by the moving party, were then due in at least that sum, and $50 for interest. The payment was made to plaintiff Ella Carpenter, who is the wife of plaintiff James H. Carpenter. The receipt which she gave stated that the payment was for “ Interest on Mortgage & Cattle & Equi ”.
Even if all of this payment be attributed to interest on the mortgage here, which in view of its distributive form cannot be done, it would fall far short of showing that there had been paid over $600 which would have been due from the execution of the mortgage in December, 1943, to October 1, 1947, and the generalities advanced by the moving party do not persuade us *268 that he will be able to show he made all of such payments or that he has any real defense to the action based on payment.
After Carpenter had sold the chattels under his mortgage he had a surplus of $2,920 in his hands which was the property of the moving party whose contention it now is that Carpenter was bound in equity to apply this money to cure whatever default may have existed under the real property mortgage, and perhaps also, if we correctly pursue the argument of the appellant, to satisfy the mortgage as far as the money would go, rather than enter a judgment of foreclosure and sale. This defense in equity is not pleaded in the proposed answer, but for the purpose of testing its availability to the moving party we will treat it as if it had been thus pleaded.
There are, no doubt, circumstances under which a mortgagee, having in his possession money of an absent mortgagor, would in good conscience be required to utilize the money to avoid the effects of foreclosure, although it must be admitted that this might not always work to the mortgagor’s benefit, and might require some more objective judgment than any litigant could be expected to exercise. Usually this kind of duty arises from the control of security collateral to the obligation in question. Waring v. Loder (53 N. Y. 581) and Lenner v. Corso (162 Misc. 500) are examples, but even as to collateral security the duty does not exist in the face of adverse equities. (Dry Milk Co. v. Dairy Products Co., 171 App. Div. 296.)
What Carpenter was required to do with the $2,920 which came into his hands as surplus from the sale of the moving party’s chattels is to be tested by what a man of good conscience and fairly disposed toward his debtor would have done in the circumstances which confronted Carpenter after Weather-wax left the farm. Some of the statements attributed to Weatherwax at the time he left are in dispute, and we accept for the purpose of decision only those facts made known to Carpenter which are not in dispute.
Carpenter could reasonably have believed that Weatherwax had abandoned his family and did not intend to return. He had been told by Weatherwax’s wife that he had taken all his clothing and departed and that she believed he would not return. She now calls this, in the light of her husband’s return seven months later, a “ temporary separation ” rather than an abandonment. But she concedes that during all this time she had no communication from him. Carpenter knew the police had searched for Weatherwax but had not located him.
*269 It cannot be argued, and indeed it is not argued by appellant, that Carpenter at the time he foreclosed the mortgage had any expectation that appellant would ever return to his farm or to his family or to continue his financial obligations. Carpenter states, and it is not denied, that Mrs. Weatherwax had no facilities or ability to operate the farm alone. We think that to utilize the money in his possession to keep the real property mortgage alive would have been pointless and not in the interest of either the mortgagor or his family as the mortgagee could then evaluate their interests, and we find that no equitable obligation in this direction then arose.
Mrs. Weatherwax states in her affidavit that Carpenter agreed before the foreclosure sale to transfer title to her and on the faith of this she did not bid on the sale. Whatever the effect of this agreement may be as between Carpenter and Mrs. Weatherwax, it is not available to the moving party here as a defense in the foreclosure action itself, even if pleaded, which it is not.
The order should be affirmed, with $10 costs and disbursements.
Foster, P. J., Heffernan, Brewster, Deyo and Bergan, JJ., concur.
Order affirmed, with $10 costs and disbursements.